UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

DONALD R. HALSTEAD, JR.,

    Plaintiff,

v.                                                    Case No. 4:05-CV-76

SOUTHERNCARE, INC., MICHAEL,           HON. GORDON J. QUIST
PARDY, JEFFREY LANG, and
ROBERT SMOOT, jointly and severally,

    Defendants.
_____/

## **OPINION**

The Court has before it Plaintiff, Donald R. Halstead's ("Halstead"), motion to remand and for attorney fees, in which Halstead contends that remand is appropriate because Defendants have failed to show that the amount in controversy exceeds the jurisdictional threshold of $75,000. Also before the Court is Halstead's motion for leave to file a response brief. For the reasons set forth below, the Court will grant both motions, remand the case, and award Halstead attorney fees pursuant to 28 U.S.C. § 1447(c).

Halstead filed this case in the Kalamazoo County Circuit Court on or about June 26, 2005. In his complaint, Halstead sued Defendants SouthernCare, Inc. ("SouthernCare"), Michael Pardy ("Pardy"), Jeffrey Lang ("Lang"), and Robert Smoot ("Smoot"), alleging state law claims for tortious interference with an advantageous business relationship and defamation. The complaint alleges six counts, with Counts I, II, and III being against Pardy, Lang, and Smoot, respectively, for tortious interference, and Counts IV, V, and VI being against Pardy, Lang, and Smoot, respectively, for

defamation. Each Count prays for a judgment in excess of $25,000. In addition, although not designated as a separate count or claim, it appears that Halstead may have intended his common allegations in paragraphs 1 through 19 of his complaint as a claim (the "common allegations claim") against all Defendants, except Pardy, based upon his inclusion of a prayer for an award of damages in excess of $25,000 at the conclusion of the common allegations in the complaint.

Defendants removed the case to this Court on July 29, 2005, on the basis of diversity jurisdiction. On August 5, 2005, the Court issued an Order noting that Defendants failed to allege the amount in controversy in their notice of removal and requiring Defendants to file an amended notice of removal setting forth the factual basis for any claim that the amount in controversy exceeds the jurisdictional threshold of $75,000. Defendants filed an amended notice of removal on August 15, 2005, in which they stated that the amount in controversy exceeds $75,000 because Halstead alleged seven claims seeking at least $25,000 per claim and Halstead alleged in the common allegations claim that SouthernCare is liable for the torts committed by Lang and Smoot on a *respondeat superior* theory. Halstead contends that neither the complaint nor the notice of removal contains any factual basis for concluding that the amount in controversy exceeds $75,000.

As the removing parties, Defendants have the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement where the complaint does not specify the amount sought by the plaintiff. Gafford v. General Elec. Co., 997 F.2d 150, 158 (6th Cir. 1993). Defendants must show that it is "more likely than not" that Plaintiff's claims meet the amount in controversy requirement. Id. "This standard 'does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement. Such a burden might well require the defendant to research,

2

state and prove the plaintiff's claim for damages.'" Hayes v. Equitable Energy Resources, Co., 266 F.3d 560, 572 (6th Cir. 2001) (quoting Gafford, 997 F.2d at 158). On the other hand, a defendant's mere conclusory statement on information and belief at the time of filing the notice of removal is not sufficient to establish this Court's removal jurisdiction. See Gaus v. Miles, Inc., 980 F.2d 564 (9th Cir. 1992); Garza v. Bettcher Indus., Inc., 752 F. Supp. 753, 763 (E.D. Mich. 1990); Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 273-74 (2d Cir. 1994).

Defendants first argue that the complaint shows that the amount in controversy exceeds $75,000 because Halstead seeks to hold SouthernCare liable for the torts committed by Lang and Smoot. Defendants reason that because Halstead asserts a total of four counts against Lang and Smoot, each seeking damages in excess of $25,000, the complaint may be read to seek damages against SouthernCare in excess of $100,000. However, "[a]lthough the claims of a single plaintiff against a single defendant may generally be aggregated whether the claims are related to each other or not, two claims must not be aggregated if they 'are alternative bases of recovery for the same harm under state law.'" Earley v. Innovex (North Am.) Inc., No. CIV. A. 02-2130, 2002 WL 1286639, at *2 (E.D. Pa. June 10, 2002) (quoting C.D. Peacock, Inc. v. The Nieman Marcus Group, Inc., No. 97-5713, 1998 WL 111738, at *3 (E.D. Pa. Mar. 9, 1998)). "A right of recovery is distinct from a theory of liability; a plaintiff may have only one right of recovery though she 'advances a variety of legal theories to support that recovery.'" Holmes v. Boehringer Ingelheim Pharms., Inc., 158 F. Supp. 2d 866, 868 (N.D. Ill. 2001) (quoting Instituto Nacional De Comercializacion Agricola (Indeca) v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi., 576 F. Supp. 991, 1004 (N.D. Ill. 1983)).

Halstead asserts separate tortious interference and defamation claims against Smoot and Lang. While Halstead elected to plead separate claims against those defendants, it appears that the

claims are based upon the same conduct giving rise to the same harm. That is, Halstead alleges that either Lang or Smoot, or both of them together, may have made false statements to Halstead's current employer, current clientele, and prospective clientele or directed non-party Tiffany Schmidt to do so. (Compl. ¶¶ 11-14.) There is no basis for inferring that Smoot and Lang caused separate harms to Halstead. Moreover, Defendants have not shown that the defamation and tortious interference claims address different harms. Although Defendants argue that each claim protects a different interest, the complaint reveals that the conduct forming the basis for the tortious interference claims is part and parcel of the conduct supporting the defamation claims. (Id. ¶¶ 37, 41 ("These false statements and the forged Covenant Not To Compete were maliciously and intentionally published when Defendant[s] [Lang and Smoot] and Ms. Schmidt, contacted facilities known to be doing business with or expected to do business with plaintiff and made the aforesaid false statements to them, intending to threaten Plaintiff and to encourage these facilities not to do business with Plaintiff for fear of legal repercussions."). Thus, even assuming that Lang and Smoot committed separate acts giving rise to different harms, the complaint shows only that SouthernCare would be liable for $50,000 ($25,000 each for Lang and Smoot).

Defendants also argue that "it seems disingenuous considering the catalogue of alleged acts of tortious interference and defamation set forth in the complaint, for plaintiff to claim he does not seek damages in excess of $75,000." (Defs.' Br. at 4.) Those acts include tortious interference with three specific clients and defamatory statements made to Halstead's current employer, his existing clientele, and his prospective clientele. (Compl. ¶¶ 13, 18.) Halstead also alleges that Defendants' actions have caused him "emotional distress, humiliation, defamation, anxiety, damage to his professional reputation in the medical and hospice communities, and loss of income." (Id. ¶ 19.)

This argument fails because it relies solely upon speculation. Defendants' burden of proof is "more likely than not," not "it could happen." Nothing in the complaint indicates the amount of damages or suggests that they even begin to approach $75,000. In fact, Halstead does not even allege that he lost his job or that any of the three clients identified in the complaint refused to do business with him. The amended notice of removal is likewise devoid of factual allegations establishing the amount in controversy. In such circumstances, courts have not hesitated to conclude that the defendant failed to meet its burden. For example, in Rodgers v. CitiMortgage, No. Civ. 05-40084, 2005 WL 1038800 (E.D. Mich. Apr. 26, 2005), the court found that the defendants' "aggregation of Plaintiff's unspecified claims in the complaint . . . does not demonstrate by a preponderance of the evidence that Plaintiff's claims actually exceed $75,000.00." Id. at *1. The court concluded that remand was appropriate because the defendants' allegations lacked "sufficient specificity" to show that the plaintiff's claims exceeded $75,000. See id. In Davis v. BASF Corp., No. Civ. 03-40198, 2003 WL 23018906 (E.D. Mich. Nov. 24, 2003), the court determined that the plaintiff's lost wages were $60,064 at the time of removal, based upon a figure in the notice of removal showing that the plaintiff's annual salary was $42,000. The defendant argued that the plaintiff's claim exceeded $75,000 because the plaintiff was also seeking damages for lost benefits, suffering, humiliation, and other damages. The court rejected the argument because the defendant failed to show the monetary value of those items. See id. at *2. Similarly, in Hill v. Ford Motor Co., 324 F. Supp. 2d 1028 (E.D. Mo. 2004), the court held that the defendant-employer failed to show that the plaintiff's claim under the Missouri Human Rights Act met the jurisdictional requirement, even though the plaintiff was seeking damages for lost wages, front pay, back pay, lost benefits, emotional distress and punitive damages. The court stated: "Having the Court presume that this case involves potential damages

exceeding $75,000.00 without offering one shred of evidence regarding potential damages would be nothing more than speculation on the part of defendant (and the Court)." Id. at 1036. Cf. Asciutto v. Allied Waste Sys., Inc., No. 05-72243, 2005 WL 2173651, at *1 (E.D. Mich. Sept. 2, 2005) (concluding that the defendant met its burden by pleading specific facts in its notice of removal showing that the plaintiff's claim exceeded the jurisdictional amount and by showing that the sales, upon which the plaintiff claimed he was owed commissions, were in the hundreds of millions of dollars).

      Defendants also contend that Halstead's failure to stipulate that he is not seeking more than $75,000 constitutes an admission that his complaint seeks damages exceeding $75,000. The court in Davis, supra, rejected a similar argument, reasoning that a plaintiff's refusal to respond to a request to stipulate to damages below $75,000 is not a proper basis for removal. Davis, 2003 WL 23018906, at *2 (citing McLain v. Am. Int'l Recovery, Inc., 1 F. Supp. 2d 628, 630-31 (S.D. Miss. 1998)). This Court agrees, and further notes that the Sixth Circuit adheres to the rule that the determination of the appropriateness of federal jurisdiction in a diversity case is to be made at the time of removal. See Ahearn v. Charter Twp. of Bloomfield, 100 F.3d 451, 453 (6th Cir. 1996). Such a stipulation would constitute a post-removal event having no bearing on the propriety of removal.

      Finally, Defendants, citing Swallow & Associates v. Henry Molded Products, Inc., 794 F. Supp. 660 (E.D. Mich. 1992) (holding that the amount in controversy should include damages pled in a compulsory counterclaim filed after removal), argue that the jurisdictional threshold is met because SouthernCare has filed a counterclaim seeking damages in excess of $75,000. Swallow, which represents the minority view, has been criticized for failing to adhere to the rule that the

amount in controversy is to be determined from the plaintiff's complaint. See Iowa Lamb Corp. v. Kalene Indus., Inc., 871 F. Supp. 1149, 1155-56 (N.D. Iowa); Al-Cast Mold & Pattern, Inc. v. Perception, Inc., 52 F. Supp. 2d 1081, (D. Minn. 1999). This Court declines to follow Swallow because, as mentioned above, the Sixth Circuit adheres to the rule that the amount in controversy is to be determined as of the time of removal. See Ahearn, 100 F. 3d at 453. Because SouthernCare did not file its counterclaim until after removal, the counterclaim has no bearing on the amount in controversy. Cf. Rogers v. Wal-Mart Stores, Inc., 230 F.3d 868, 872 (6th Cir. 2000) (holding that a post-removal stipulation reducing the amount in controversy to below the jurisdictional limit has no effect on the jurisdictional amount as of the time of removal). Finally, as in Schoenfelder, Inc. v. Allstate Insurance Co., No. 1:05-CV-490, 2005 WL 2001168 (W.D. Mich. Aug. 18, 2005), the Court rejects Defendants' argument because Defendants failed to cite their counterclaim or facts supporting their counterclaim as a basis for jurisdiction in their amended notice of removal. Id. at *2. Thus, the Court will remand the case.

Having concluded that Defendants have failed to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000, the Court must consider Halstead's request for an award of attorney fees pursuant to 28 U.S.C. § 1447(c). An award of fees under this section is discretionary. See Bartholomew v. Town of Collierville, 409 F.3d 684, 686 (6th Cir. 2005). A court should ordinarily award fees under § 1447(c) where the defendant's attempt to remove the case was not fairly supportable. See id. at 687 (citing Ahearn v. Charter Twp. of Bloomfield, No. 97-1187, 1998 WL 384558, at *2 (6th Cir. June 18, 1998)). A court need not find that the defendant acted in bad faith or for an improper purpose in order to award fees. See Morris v. Bridgestone/Firestone, Inc., 985 F.3d 238, 240 (6th Cir. 1993). The Court concludes that an award of fees is proper because

7

Defendants' removal was not fairly supportable.  As noted above, in their initial notice of removal, Defendants failed to set forth any allegation whatsoever that the amount in controversy exceeded $75,000.  In their amended notice of removal, Defendants offered only conclusory reasons why Halstead's claims may exceed $75,000.  In other words, in spite of this Court's direction to support their allegations with facts, Defendants did not adequately explain why Halstead's claims exceeded the jurisdictional amount.

In support of his request for fees, Halstead has submitted an affidavit from his counsel.  Plaintiff's counsel, Terrence Lilly, states that he spent two hours on the motion and that his associate spent five hours researching and preparing the motion.  Attorney Lilly further states that the average hourly rate for lawyers in the Kalamazoo area with forty years of experience is $225 and that, although his associate has eight years of experience, he is willing to bill her hours at the paralegal rate of $80 per hour, resulting in a total fee request of $850.  The Court concludes that the number of hours spent on the motion and brief is reasonable.  In addition, based upon its own familiarity with hourly rates in this district and awards of fees it has made in other cases, the Court finds that requested rates are reasonable.  Accordingly, the Court will award Halstead $850 in fees.

An Order consistent with this Opinion will be entered.


Dated:  September 16, 2005                     /s/ Gordon J. Quist
                                                                               GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE